## STULL v. UNITED STATES.

### No. 1420.

District Court, W. D. Pennsylvania.

Nov. 8, 1943.

Scanlan & Harkins and William A. McGuire, all of Johnstown, Pa., for plaintiff.

Charles F. Uhl, U.S. Atty., and James F. Boyer, Asst. U.S. Atty., both of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

Stonycreek River is non-navigable. A part of the river is located within the City of Johnstown, Cambria County, Pennsylvania. The City of Johnstown passed ordinances in 1892, 1894 and 1925 under the authority of an Act of Assembly of the Commonwealth of Pennsylvania, establishing the channel lines of said river within the boundaries of said city. Plaintiff's decedent acquired title to the property involved in this case in the year 1908. He constructed buildings on the property in the year 1911 and made some improvements or enlargements thereof prior to 1925. May 26, 1941, the Government condemned a perpetual easement in all but a small triangular portion of plaintiff's land

in which a temporary easement was taken, the purpose being for the widening of the channel of said river for the protection of the City of Johnstown. Viewers were appointed by this Court to determine the damages to plaintiff's property. They made an award in his favor in the sum of $14,000. An appeal was taken by both the plaintiff and the defendant. At the trial of the appeal, the jury rendered a verdict in favor of the plaintiff in the sum of $17,300.

The case is now before us on the Government's motion for a new trial. That motion is based on the ground that the measure of damages adopted by the Court was erroneous.

Plaintiff contended at the trial, that in fixing the fair value of his property at the time of condemnation, that the value of the land and the buildings thereon, within the channel lines fixed by the ordinances of the City of Johnstown, should be considered, subject to the qualification that the City of Johnstown had the right to take the property at any time without compensating plaintiff for the value of the buildings thereon. The Government contended that the fair value of plaintiff's property at the time of the condemnation should be determined by establishing the fair value thereof without any consideration of the buildings located thereon. Both sides agreed that if the condemnation had been made by the City of Johnstown or the Commonwealth of Pennsylvania, the value of the buildings should not be considered.

Plaintiff further contended that the Government did not stand in the same position as the City of Johnstown; the Government contended that it did. Neither side cited any authority in support of the contention made. The Court adopted the contention of the plaintiff for the reason that if plaintiff owned the buildings, he had a right to sell the property and the buildings, subject to the right of the City of Johnstown, as aforestated; that fair compensation to plaintiff, therefore, would mean the fair value of the property and buildings, subject to the aforesaid right of the City; that the City of Johnstown not being an agent of the United States, the latter did not succeed to the rights of the City.

Three days before the verdict in this case, the Supreme Court of the United States decided the case of the United States ex rel. Tennessee Valley Authority v. Powelson, Assignee and Successor in Interest of Southern States Power Company, et al., 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390. That case involved the condemnation of a large area of land for the Tennessee Valley Authority, a Government agency. The owner of a part of the area condemned was a power company, a corporation of the State of North Carolina, possessing the right of eminent domain. The power company sought to establish a high valuation on what it owned, on the theory that its property, together with the property of others which it could acquire by eminent domain, comprised an elaborate four-dam hydro-electric plant. The Supreme Court, in the majority opinion, stated (page 277 of 319 U.S., page 1053 of 63 S.Ct., 87 L.Ed. 1390): "Accordingly it seems clear that if North Carolina rather than the United States were constructing this public project and condemning the identical lands for the purpose, respondent need not be compensated for the loss of an opportunity to develop a power project through utilization of the right to condemn. In case this was North Carolina's project respondent's chances of combining these numerous tracts into one ownership for a power project would be measured without reference to the power of eminent domain."

And also, at page 284 of 319 U.S., page 1057 of 63 S.Ct., 87 L.Ed. 1390: "We merely hold that the United States in absence of a specific statutory requirement, need not make compensation for the loss of a business opportunity based on the unexercised privilege to use the power of eminent domain where the state need not do so were it the sponsor of the public project and the taker of the lands. The constitutional obligation of the United States to make compensation does not extend so far."

Four of the Justices dissented from the majority opinion on the question of compensation but there were no dissents on the holding that the United States would not be liable if the State was not liable. I, therefore, conclude under authority of the above case, that the same rule of damages would apply in this proceeding as would apply if the condemnation had been made by the City of Johnstown or the Commonwealth of Pennsylvania.